IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Toledo Memorial Park and Mausoleum,

Plaintiff,

-vs-

City of Sylvania,

Defendant.

Case No. 3:23 CV 1795

MEMORANDUM OPINION

JUDGE JACK ZOUHARY

## INTRODUCTION

This takings case has reached its final issue. Defendant City of Sylvania ("the City") paid Plaintiff Toledo Memorial Park and Mausoleum ("TMP") $430,075 for the taking of a narrow strip of TMP's property along Monroe Street. TMP sought substantially more, relying principally on the opinions of appraiser Eric Gardner, architect Mark Koeninger, and contractor Fidel Cashero.

This Court previously excluded the expert opinions supporting TMP's stone-wall replacement theory, its 3.68-acre funeral-home-site theory, and related remainder damages (Doc. 85). After additional briefing, this Court also excluded Gardner's remaining $160,000 site-improvement opinion (Doc. 98). What remains? TMP claims it has other admissible evidence from which a jury could determine that the $430,075 already paid was insufficient and it is entitled to additional compensation.

At a Record Conference, TMP identified three witnesses -- former TMP President and CEO Jeffery Clegg, current President and CEO Chad Albert, and City appraiser Michael Ducey (Doc. 99). This Court directed briefing on "whether these witnesses can provide additional, admissible opinions on value" (*id.*). TMP filed its "Snapshot" Brief (Doc. 102), and the City responded (Doc. 103).

## BACKGROUND

TMP owns and operates a cemetery and mausoleum complex in Sylvania, Ohio. As part of the Monroe Street widening project, the City acquired a narrow strip along the southern edge of TMP's property, together with temporary easements. The permanent take totaled roughly one-quarter acre from TMP's approximately 380-acre holding (Doc. 85 at 1–2).

The City paid TMP $430,075 based on an appraisal prepared by Michael Ducey (*id.* at 2). TMP sought additional compensation through several theories. Gardner valued a 3.68-acre corner as a separate future funeral-home site; Gardner and Koeninger claimed additional damages associated with that proposed use; Gardner adopted Cashero's wall-reconstruction estimate; and Gardner separately valued other site improvements (Docs. 65-1; 66-2).

This Court rejected those expert theories. Among other things, this Court held that "[c]omponents of a property may not be carved out, separately priced, and added as independent damage items; the correct measure is the difference in value of the tract as a whole before and after the taking" (Doc. 85 at 8). This Court also held that replacement cost for the wall could not substitute for evidence of diminution in the property's market value, and that the proposed funeral-home use lacked a sufficiently concrete factual foundation (*id.* at 6–9). Gardner's final site-improvement opinion was later excluded for lack of reliable factual and methodological support (Doc. 98).

This Court therefore advised that "TMP will need to point to admissible evidence from which a jury could determine that it is entitled to additional compensation" (Doc. 98 at 6). TMP identified Clegg, Albert, and Ducey. This Court then directed focused briefing on those witnesses (Doc. 99).

TMP says Clegg will testify "to the value of TMP's property," describe TMP's intention to preserve the southeast corner for a funeral home or mausoleum, discuss third-party purchase inquiries, explain the significance of the wall and grade change, and criticize several aspects of Ducey's appraisal (Doc. 102 at 1–4). Albert will corroborate certain factual matters, but TMP does not identify any valuation opinion he will offer (*id.* at 4–5). Finally, TMP proposes to call Ducey "as on cross-

examination" to expose asserted flaws in his appraisal, including the existence of an earlier appraisal reflecting $507,015 in total compensation (*id.* at 5). The City responds that this evidence does not supply a legally sufficient before-and-after valuation and requests summary judgment under Federal Civil Rule 56 (Doc. 103 at 1, 5–6).

## LAW

Federal Civil Rule 56 requires summary judgment where "there is no genuine dispute as to any material fact" and judgment is appropriate as a matter of law. At summary judgment, allegations and the possibility of favorable credibility determinations do not substitute for evidence. "[S]ignificant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The nonmoving party "must present affirmative evidence to support its position; a mere 'scintilla of evidence' is insufficient." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citation omitted).

## DISCUSSION

This Court first notes that TMP has had notice and a reasonable opportunity to address summary judgment under Federal Civil Rule 56(f)(3). TMP previously argued that any dispositive determination should occur only after it had the opportunity to identify its remaining evidence (Doc. 97 at 4–6). This Court then did exactly that, instructing TMP that it would need to identify admissible evidence supporting additional compensation (Doc. 98 at 6), and directing TMP to identify whether Clegg, Albert, or Ducey could provide admissible valuation testimony (Doc. 99). TMP turned over its remaining cards (Doc. 102); the City responded and expressly requested summary judgment (Doc. 103).

TMP relies on the owner-opinion rule. Ohio law permits an owner to testify to the value of property without first qualifying as an appraisal expert. *Smith v. Padgett*, 32 Ohio St. 3d 344, 347 (1987) ("[A]n owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property."). The Ohio Supreme Court has held that a corporate representative may offer owner-type valuation testimony where his knowledge of the property is

"tantamount to that of an owner by virtue of having purchased, or dealt with, the property as if he were the individual owner." *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St. 3d 621, 627 (1992).

TMP cites *Worthington City Schools Board of Education v. Franklin County Board of Revision*, which held "it is the degree of acquaintance with the property rather than the rank within the corporate entity that is most significant." 140 Ohio St. 3d 248, 256 (2014) (Doc. 102 at 3–4). The owner-opinion rule, however, still requires a foundation for any opinion. The Sixth Circuit recently held that landowner valuation testimony "is not purely lay testimony" and that "some foundation must be laid regarding how a landowner appraised his property." *HRT Enters. v. City of Detroit*, 163 F.4th 319, 334 (6th Cir. 2025). Likewise, a nonexpert valuation opinion must be "based upon more than mere conjecture." *United States ex rel. Tenn. Valley Auth. v. Easement & Right of Way Over a Tract of Land in Madison Cnty.*, 405 F.2d 305, 307 (6th Cir. 1968). Each of TMP's proposed non-expert witnesses will be addressed below.

**Clegg**

TMP spends considerable effort establishing Clegg's familiarity with the cemetery. He served as TMP's President and CEO from 2010 to 2025, has served on its Board since 1999, has longstanding family connections to TMP, and has experience in commercial construction (Doc. 102 at 1–2). Those background facts are relevant to whether he may offer owner-type testimony. The problem is with his proposed testimony.

TMP says Clegg "will testify, as a TMP representative, to the value of TMP's property" (*id.* at 2). But after being directed to identify admissible valuation testimony, TMP does not tell this Court what that value is. It provides no before-taking value, after-taking value, or resulting diminution. TMP also fails to outline any calculation or reasoning connecting Clegg's personal experience to a particular market-value opinion. Instead, TMP says Clegg's testimony "will be more fully developed at trial" (*id.* at 4). Rule 56 does not permit a party to reserve its essential proof for trial after being specifically ordered to identify the evidence that supposedly creates a triable issue. TMP was asked to identify

admissible evidence of additional compensation and had a full opportunity to do so. An assurance that a valuation will be developed later is not affirmative evidence now. And the facts TMP identifies do not fill the hole. TMP alleges Clegg would testify about a 2014 inquiry to purchase roughly one-half acre of the southeast corner for between $350,000 and $600,000, and a 2026 inquiry concerning possible hotel development (*id.* at 2). But neither inquiry resulted in a contract or sale, neither supplies a before-and-after value for the 380-acre tract, and the 2026 inquiry occurred years after the valuation date.

The same is true of the wall, slope, and intended funeral-home use. Clegg might be able to testify to historical and operational facts within his personal knowledge. But he may not use owner testimony to repackage valuation theories this Court has already rejected. This Court previously held that the southeast corner cannot be "carved out, separately priced, and added as [an] independent damage item" (Doc. 85 at 8). And this Court rejected use of wall replacement cost as an independent measure of compensation because fair-market value of the property as a whole remains the benchmark (*id.* at 5–7). A theory does not become admissible simply because it is repeated by a lay witness.

This Court does not disagree that Clegg is familiar with the property. But his familiarity does not eliminate the requirement that the opinion rest on something more than conjecture. The Sixth Circuit has long required that a nonexpert valuation witness know the property and have an opinion "based upon more than mere conjecture." *Easement & Right of Way Over a Tract of Land in Madison Cnty.*, 405 F.2d at 307. More recently, *HRT Enterprises* held that owner valuation testimony "is not purely lay testimony" and that "some foundation must be laid regarding how a landowner appraised his property." 163 F.4th at 334. The court affirmed exclusion where the owner, despite substantial experience, failed to adequately explain his valuation. *Id.*

While the authorities cited by TMP recognize the general competency of owners to give value opinions; they do not hold that ownership or familiarity permits a witness to offer an unidentified or unexplained valuation. *See, e.g.*, *Rover Pipeline, LLC v. 10.055 Acres of Land*, 2018 WL 6833399, at *5 (N.D. Ohio 2018); *Pennymac Loan Servs., LLC v. Crocker*, 2016 WL 6134009, at *4 (N.D. Ohio

2016). The same is true of the out-of-circuit cases collected by TMP, which recognize the owner-opinion rule but do not dispense with the need for an actual valuation opinion (*see* Doc. 102 at 3–4).

This precise defect with the Clegg testimony has been identified by the Sixth Circuit. In *HRT Enterprises*, the owner "testified at length about his background in aerospace and real estate." 163 F.4th at 334. However, "he did not explain how he arrived at his $5 million valuation." *Id.* Here, the deficiency is more fundamental -- TMP does not even identify Clegg's valuation number. The Sixth Circuit rule forecloses his testimony, as there must be "some foundation" explaining "how a landowner appraised his property." *Id.*

**Albert**

The same analysis applies to Albert. TMP says he will corroborate the recent purchase inquiry, the grade change, TMP's intended future development, the alleged absence of other space for that development, and the services TMP offers (Doc. 102 at 4–5). TMP does not assert Albert will offer any opinion of the property's fair-market value before or after the taking, or how he would calculate such a value. And further testimony of the funeral-home theory merely attempts to resurrect a matter already decided, as this Court previously found that TMP's proposed funeral-home use was too speculative to support a separate highest-and-best-use valuation and excluded opinions assigning independent value or damages to that corner (Doc. 85 at 7–9). Albert's testimony is also dead on arrival.

**Ducey**

TMP's final proposed source of proof is Ducey, whom it intends to call "as on cross-examination" (Doc. 102 at 5). TMP, having noticed Ducey for deposition early on (Docs. 61–62), now wishes to explore several possible impeachments. It disputes Ducey's $13,000-per-acre valuation, treatment of the grade change, zoning analysis, and depreciation of the wall. TMP adds that Ducey prepared an earlier appraisal totaling $507,015 before a later appraisal resulted in the $430,075 payment (Doc. 102 at 5). The earlier appraisal lists $496,685 for the part taken, $9,405 in cost-to-cure, and $925 for temporary easements (Doc. 102-3 at 3–4).

A jury ordinarily "is free to disbelieve expert testimony that it finds to be flawed." *United States v. Lang*, 717 F. App'x 523, 534 (6th Cir. 2017). And a jury may reject expert testimony "even if uncontradicted." *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 798 (6th Cir. 1996). But disbelief does not supply affirmative proof of a different valuation. The Sixth Circuit has held that a plaintiff "cannot survive summary judgment simply by stating that a jury could disbelieve" the opposing witness. *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) (citation omitted). Further, "when challenges to witness[] credibility are *all* that a plaintiff relies on, and he has shown no independent facts -- no proof -- to support his claims, summary judgment in favor of the defendant is proper." *Id.* (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Put differently, the "prospect of challenging a witness'[s] credibility is not alone enough to avoid summary judgment." *Id.* (quoting *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998)).

So too here. Even complete rejection of Ducey's current opinion would not tell a jury what the property was worth before the taking, what it was worth afterward, or what additional amount should be awarded. A jury cannot select a damages figure from speculation. And the earlier $507,015 appraisal does not change the result. TMP identifies this higher appraisal as a "flaw" in his later appraisal (Doc. 102 at 5). TMP does not contend that Ducey presently holds the earlier opinion, nor does TMP adopt the earlier appraisal as its own before-and-after valuation. More importantly, the earlier appraisal itself includes component figures prepared under assumptions that were later revised. While it may provide impeachment material, it does not relieve TMP of producing admissible affirmative evidence supporting its own claim for additional compensation.

In short, TMP's theory would invert the burden at trial -- if the City's appraisal can be criticized, the jury must be provided a basis to award something more. Cross-examination is not a substitute for evidence on an essential element of TMP's own claim. TMP "must present affirmative evidence to support its position." *Jones*, 677 F. App'x at 282. It failed to do so.

## CONCLUSION

This case has been pending for three years, with full opportunity for discovery. No triable valuation issue remains above ground, as there is no admissible evidence from which a reasonable jury could determine either that the amount already paid by the City was inadequate, or that additional compensation may be owed. The City's Motion (Doc. 103) is granted. This case, after a long life, is laid to rest.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 22, 2026